IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MATTHEW JONES, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 19-896-RGA |
| OFFICER WILLIAM THOMAS, | : |
| Defendant. | : |

Matthew Jones, Greenwood, Delaware.   Pro Se Plaintiff.

Daniel A. Griffith, Esquire, Whiteford, Taylor & Preston, L.L.C., Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

March 16, 2022
Wilmington, Delaware

**ANDREWS, U.S. District Judge:**

Plaintiff Matthew Jones, who appears *pro se* and has been granted leave to proceed *in forma pauperis* filed this action on May 13, 2019. (D.I. 2). The matter proceeds on the Amended Complaint. (D.I. 8). Before the Court are the parties' cross motions for summary judgment. (D.I. 59, 60). Briefing is complete.

## BACKGROUND AND FACTS PRESENTED BY THE PARTIES

The Amended Complaint alleges that on November 1, 2017,[1] Defendant Officer William Thomas, an employee of the municipality of the Town of Greenwood, Delaware, and others searched Plaintiff and his home without a warrant; that after Defendant asked Plaintiff several questions he determined that Plaintiff was a threat to himself and others and "judged" Plaintiff as having schizophrenia; and that Defendant removed Plaintiff from his home and transported Plaintiff to the Nanticoke Hospital where Defendant recommended that Plaintiff be involuntarily held and medicated. (D.I. 8 at 1, 4-5). The Court liberally construed the Amended Complaint upon screening and determined that it alleged what appeared to be a Fourth Amendment warrantless search and seizure claim of Plaintiff and his home pursuant to 42 U.S.C. § 1983. (*See* D.I. 9 at 6, D.I. 10).

On November 9, 2017, the Greenwood Police Department received a telephone complaint that Plaintiff was trespassing at the Woodbridge Early Childhood Education

---

[1] Plaintiff refers to November 1, 2017 as the relevant date (D.I. 1, ¶ 4), and Defendant refers to November 17, 2017 as the relevant date in his motion for summary judgment (D.I. 61 at 1). The reports submitted to the court indicate the incident complained of occurred on November 9, 2017. (D.I. 62 (two police reports) & D.I. 67 (Initial Behavioral Health Assessment)).

1

Center and taking photographs through the building's windows. (D.I. 62 at 4). While at the school, Plaintiff came into contact with Paula Steele, her spouse, and child. (*Id.*). Thomas responded to the call and checked the area "with negative contact with Jones." (*Id.*).

That evening, Plaintiff posted comments on his public Facebook account that resulted in reports to the Greenwood Police Department. (*Id.* at 6-8). Due to concerns regarding the nature of the complaints, the Greenwood Police Department contacted Mobile Crisis Intervention.[2] (*Id.*) Mobile Crisis agreed that it was appropriate to make contact with Plaintiff and advised the Greenwood Police Department that it would not go to Plaintiff's residence alone due to past experiences with Plaintiff. (*Id.*). Police Officers from the Delaware State Police, Bridgeville Police Department, and Greenwood Police Department met with Mobile Crisis at a Royal Farms and, together, went to the residence. (*Id.*).

Officers arrived at Plaintiff's residence around 9:00 p.m. (*Id.* at 5). Plaintiff's mother, Ms. Jones signed a notarized, but unsworn, statement that she did not give Defendant permission to enter her house and told him not to come into her house. (D.I. 66 at 4). Ms. Jones does not specify which time she is discussing, but, giving the *pro se* Plaintiff the benefit of the doubt, I assume it is the relevant time. Defendant

---

[2] The Delaware Division of Substance Abuse and Mental Health offers crisis intervention services, twenty-four hours a day to assist people, eighteen years and older, with "severe personal" problems including "thoughts of suicide, delusions, paranoia and substance abuse." "[C]risis staff work in conjunction with every police department throughout the state, . . . [including] assisting in the evaluation of persons picked up on criminal charges who may require mental health evaluations and who may be appropriate for the State's Mental Health Courts." *See* https://www.dhss.delaware .gov/dsamh/crisis_intervention.html (last visited March 8, 2022).

states that Plaintiff's mother gave permission to enter the home. (D.I. 31 at 25, ¶ 11). Defendant states that probable cause existed to enter the home for multiple reasons including the threats made by Plaintiff on social media and the threat of harm to himself/and or others. (*Id.* at 24, ¶ 8).

Once the officers were inside the home, Plaintiff recorded the incident and streamed it on Facebook Live. (D.I. 62 at 6; D.I. 65). The video recording is about six minutes long and (for reasons that are not explained) has a date of November 10, 2017 at 2:26 a.m. (D.I. 65). The video depicts Plaintiff moving from a hallway into the kitchen, Plaintiff speaking to the officers, Plaintiff being questioned about his mental well-being by Mobile Crisis, Plaintiff being informed by Mobile Crisis that he was being placed on a "twenty-four hour detention for impaired mental condition," and Plaintiff stating that he would "honor that." (D.I. 65). Mobile Crisis advised Plaintiff that he would undergo a 24-hour emergency psychiatric medical evaluation, and he was taken into custody. (D.I. 62 at 6). Defendant states that he did not make the decision to take Plaintiff into custody and does not know who did. (D.I. 31 at 25 ¶ 10).

## LEGAL STANDARDS

Rule 56(c) requires the court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

As a general rule, the court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

> Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations, quotations, and alterations omitted). The same standards and burdens apply on cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

## DISCUSSION

Plaintiff moves for summary judgment on all claims he initially raised. The only claim that remains is the Fourth Amendment claim and, therefore, his motion is construed as seeking summary judgment for that claim only. In his motion, Plaintiff

4

details his mother's description of what happened when police arrived on November 9, 2017. (D.I. 59 at 8). However, the only statement in the record from Ms. Jones is that she did not give permission to police officers to enter her home and, therefore, the description is not considered. Plaintiff also relies upon the video that he recorded. (*Id.* at 11). He states, "in my video of my arrest, police officers can be seen searching my house . . . they did not have a warrant . . . it was after midnight." (*Id.*).

Defendant moves for summary judgment on the grounds that he is entitled to qualified immunity as he did not violate Plaintiff's constitutional rights, Ms. Jones gave permission to enter the home and, in the alternative, exigent circumstances existed to justify entry into the residence. (D.I. 61 at 7-11).

Summary judgment is not appropriate for either party. Both sides present their arguments in at best a conclusory and unconvincing fashion. There may or may not be a genuine issue of fact whether Plaintiff's mother gave consent to enter the premises. Plaintiff states that no permission was given to enter the home and therefore, the entry was unlawful, while Defendant contends that Plaintiff's mother gave permission to enter the home and the warrantless entry was lawful. Plaintiff's argument depends upon a cursory and somewhat ambiguous statement from his mother. She has not been deposed. Defendant's argument depends upon unsworn police reports and his own conclusory Interrogatory response. He has not been deposed. Defendant argues in the alternative that exigent circumstances existed to justify entry into the residence. The "exigent" nature of the circumstances is presented conclusorily. Thus, the record evidence is insufficient for this Court to conclude that such circumstances existed.

Therefore, both motions will be denied.

5

The Court thinks it would be in the interests of justice to reopen discovery so that depositions or other discovery relevant to whether there was consent, whether the entry took place at about 9 p.m. or after midnight, and whether there was a search and, if so, what kind of search it was and what the justification for it was.   A new dispositive motion deadline will be set.

## CONCLUSION

For the above reasons, the Court will deny the parties' cross-motions for summary judgment (D.I. 59, D.I. 60).

An appropriate order will be entered.